Lipscomb, J.
The indictment in this case was under the 9th section of the act of 1840 to suppress gaming. The section is as follows: “ That if any person shall permit any banking game or such as are inhibited by the third section of this act to be kept in his or her house, or shall rent a room for this purpose, he or she shall suffer the same punishment as those convicted of keeping such banks.” It must be obvious to every one that, by a fair construction of the language of the law, a knowledge of the fact forbidden by the law is a constituent ingredient in the offense." It is difficult, if not impossible, to conceive of any definite meaning to the word permit, without carrying; with it a knowledge of the tiling permitted. If one is ignorant of the existence of a fact, it could with no propriety be said that lie permitted it. If, however, there is no evidence of a positive permission, secondary evidence can be resorted to. There may be no positive evidence of an express permission from, the master of the house that tilings forbidden by law have been done and transacted iu his house ; but if it is proved that lie witnessed the transaction, it would be an implied permission to do the act if lie did not prevent its recurrence and immediately put a stop to it. Again, if his house was small, the presumption would be strong that he knew"of what was going on iu it. If, however, it contained fifty or one hundred apartments, occupied by boarders, the presumption would be much weakened of his knowledge of what might be done by boarders in those apartments. But if the presumption of knowledge of the transaction lias been created, all the circumstances iu rebuttal of such presumption should come from the party against whom it lias been raised. On the trial of an indictment, like the trial of all other facts, tiie best evidence the nature of the case admits of must be produced to establish the-charges contained in it. On the question presented by the charge on the first count there can be no difference of opinion, but that express permission would, be the best evidence in support of the charge contained in this count; but if’ this could nob be procured, some fact onghtto be shown from which such permission may be fairly inferred. When this lias been done the prosecution has-made out a prima facie ease, which will stand as proved if not rebutted. If it were proved that the defendant lived iu or occupied the house, from such fact, as before stated, the presumption would arise that if a faro bank was kept or .exhibited in a house so in his possession it was within his knowledge, and unless rebutted would be enough to sustain the charge. But I cannot "believe liiat the mere fact of ownership of the house, without possession according to the ordinary transactions of the business of life, would necessarily raise that presumption, because the owner might be in possession of the house he so owned. It might be in the possession of a tenant, and the owner know nothing about what was done in it. If the defendant was in possession, whether as owner, .tenant, or as a trespasser, it would be “his house ” within the meaning of the law.' I believe therefore the court erred in the charge given on the first count in the indictment.
On the second count: It seems to me that the charge asked to be given was precisely within the terms of the law; that it was necessary, to sustain the prosecution under the second count, to prove facts showing that the defendant rented the house charged iu the indictment for the purpose of keeping a. faro bank. I believe the court ought to have given the charge as asked; and it would certainly have been proper for the court to have further explained what would be evidence of a knowledge on the part of the plaintiff that the- *9 room was intended to be used for keeping or exhibiting a faro bank; and in the absence of positive proof of such knowledge, that resort could be had to the proof of some fact or facts from which it could be fairly inferred. But I cannot concur with the court below “that it was sufficient to sustain the charge to prove that the defendant rented the house, aud that a faro bank was kept or exhibited therein.” Suppose that tire defendant had leased out his house for a year to an entire stranger, without having any knowledge what use the tenant could make of it, and the tenant should keep a faro bank or permit one in the house : is it possible that the fact of the owner having rented the house would be sufficient to raise a presumption against him? Or would the fact of his house being so occupied be a sufficient ground for ejecting his tenant? I think not. Renting a room, without any attendant circumstance to prove that it was known to what use it was to be applied, would not raise a presumption of such knowledge. If the defendant knew the habits and calling of the person who applied to him to rent his house to be that of a gambler, the inference might well be drawn that the defendant knew in what way it was intended to occupy his house. To require the defendant to prove his want of knowledge of the intention of tiróse who might wish to lease a house from him would be requiring him to prove a negative; and surely the ordinary rules of evidence should not be inverted and a man be called to prove his innocence before a reasonable presumption of his guilt had been raised. Such a rule would have a great tendency to diminish the value of property, as landlords would not know to whom they could with safety rent their houses, lest the tenant should permit a prohibited game to be played, and thereby subject the owner of tiie house to the pains aud penalties imposed by the law. No such rule is called for by the policy or the terms of the statute. If such games are exhibited, a conviction of the person in possession or having the immediate control of the house would not be difficult- I cannot, therefore, consistently with what I consider the well-established rules of evidence, give my sanction to the two first charges given by the court below to the jury, and it is needless to consider the third charge. It is the opinion of the majority of the court that the court below erred in the two charges given, which have been discussed, and in refusing to give the two first asked by the defendant. The judgment is therefore reversed and the case remanded.
Judgment reversed.
Wheeler, J. In this case I give no opinion.